# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 01/27/2022 03:35:37 PM.
30-2022-01243131-CU-OE-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

|  | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EMMANUEL SITACA, KEITH DARYL GOROZA, ASHLEY
ROLLICE, ("Additional Parties Attachment Form is attached")

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court

751 W Santa Ana Blvd, Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso):*
30-2022-01243131-CU-OE-CJC

Judge Melissa R. McCormick

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Caleb Marker, Zimmerman Reed, LLP,6420 Wilshire Blvd., Ste. 1080, Los Angeles, CA 90048;877-500-8780

| DATE:<br>*(Fecha)* 01/27/2022 | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* _Skeeter Berry_ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [X] on behalf of *(specify)*: **AMAZON LOGISTICS, INC.**

   under: [X] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
           [ ] other *(specify)*:

4. [X] by personal delivery on *(date)*: 2-2-2022

**SUMMONS**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**Exhibit A, Page 19**

SUM-200(A)

| SHORT TITLE:                        | CASE NUMBER: |
| SITACA v. AMAZON, INC., et al.      |              |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[x] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

ROSSANA ROMERO, ABDULLAH NOMAN, ANGELA WINSTON, LIBRA HARRISON, DANISH KAMAL, BRIAN BLACK, TREVOR BALTZER, TIBOR FAZEKAS, DIANA ANAYA, JENNIFER AILEY, DIANA CARRASCO, JENNIFER LEWIS, CURTIS AZEVEDO, DANIEL VENTURA, JORGE LUIS FIERRO DIRCIO, and TONY LEE

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**Exhibit A, Page 20**

Electronically Filed by Superior Court of California, County of Orange, 01/27/2022 03:35:37 PM.
30-2022-01243131-CU-OE-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk.

CALEB MARKER (SBN 269721)
 caleb.marker@zimmreed.com
JENNIFER HAIDAR (SBN 337558)
 jennifer.haidar@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

EMMANUEL SITACA, KEITH DARYL
GOROZA, ASHLEY ROLLICE, ROSSANA
ROMERO, ABDULLAH NOMAN,
ANGELA WINSTON, LIBRA HARRISON,
DANISH KAMAL, BRIAN BLACK,
TREVOR BALTZER, TIBOR FAZEKAS,
DIANA ANAYA, JENNIFER AILEY,
DIANA CARRASCO, JENNIFER LEWIS,
CURTIS AZEVEDO, DANIEL VENTURA,
JORGE LUIS FIERRO DIRCIO, and TONY
LEE.

                    Plaintiffs,

          v.

AMAZON.COM, INC., and AMAZON
LOGISTICS, INC.,

                    Defendants.

CASE NO.: 30-2022-01243131-CU-OE-CJC

**COMPLAINT**    **Assigned for All Purposes**
                  Judge Melissa R. McCormick

1.  Unlawful Nonpayment of Wages (Cal. Lab.
    Code Labor Code, §§ 204, 204(c), 207)
2.  Failure to Provide Itemized Wage Statements
    (Cal. Lab. Code § 226)
3.  Failure to Provide Compensation to Former
    Couriers (Cal. Lab. Code § 201, 202, and 203)
4.  Failure to Pay Minimum Wage (Cal. Lab.
    Code§§ 1194, 1194.2, 1197, 1197.1)
5.  Failure to Reimburse Business Expenses (Cal.
    Lab. Code § 2802
6.  Failure to Pay Split Shift Premiums (Cal. Lab.
    Code§§ 510, 1194)
7.  Unfair and Unlawful Competition (Cal. Bus. &
    Prof. Code § 17200 et seq.)
8.  Failure to Pay Overtime Wages  (Cal. Lab.
    Code§§ 510, 1194)
9.  Failure to Provide Meal and Rest Breaks (Cal.
    Lab. Code§§ 512, § 226.7 (b)-(c))
10. Unlawful Deduction from Wages  (Cal. Lab.
    Code§§ 221, 224)

    **(Jury Trial Demanded)**

1  Plaintiffs Emmanuel Sitaca, Keith Daryl Goroza, Ashley Rollice, Rossana Romero, Abdullah
2  Noman, Angela Winston, Libra Harrison, Danish Kamal, Brian Black, Trevor Baltzer, Tibor Fazekas,
3  Diana Anaya, Jennifer Ailey, Diana Carrasco, Jennifer Lewis, Curtis Azevedo, Daniel Ventura, Jorge
4  Luis Fierro Dircio, and Tony Lee. ("Plaintiffs"), bring this Complaint, against Defendants
5  AMAZON.COM, INC. and AMAZON LOGISTICS, INC. (collectively "Amazon" or "Defendants"),
6  and allege, upon personal knowledge as to their own facts, and upon the investigation of counsel as to
7  all other matters:

8  **INTRODUCTION**

9  1.  Plaintiffs are Amazon Flex delivery drivers, called "couriers," and bring this action to
10  recover lost wages for Defendants' willful violations of California state law.

11  2.  During all relevant times, Defendants employed Plaintiffs as couriers to provide delivery
12  services to Amazon customers who purchased goods through Defendants' online retail website.

13  3.  Plaintiffs are current and former Amazon couriers and have not been properly
14  compensated for the work they performed on Defendants' behalf.

15  4.  During all relevant times, Defendants misclassified Plaintiffs as independent contractors
16  as opposed to employees in willful violation of California state law, causing financial loss to Plaintiffs
17  in the form of unpaid wages.

18  5.  Plaintiffs bring this action to recover unpaid wages, liquidated damages, penalties, fees
19  and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

20  **THE PARTIES**

21  6.  Plaintiff Emmanuel Sitaca is an adult resident of Woodland Hills, California and works
22  as an Amazon courier in Los Angeles County, California. Plaintiff Sitaca spends more than 2 hours a
23  day logging in and waiting for a block, has over $100 per month in unreimbursed business expenses,
24  and drives an estimated 1200 miles a week in the course of his employment for Amazon. Plaintiff Sitaca
25  was assigned to more than 10 blocks per week.

26  7.  Plaintiff Keith Daryl Goroza is an adult resident of San Leandro, California and works
27  as an Amazon courier in Alameda County, California. Plaintiff Daryl spends more than 2 hours a day
28  logging in and waiting for a block, has over $100 per month in unreimbursed business expenses, and

2
COMPLAINT

**Exhibit A, Page 22**

1  drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Daryl was

2  assigned to approximately 5-6 blocks per week.

3         8.    Plaintiff Ashley Rollice is an adult resident of Chino Hills, California and works as an

4  Amazon courier. Plaintiff Rollice spends approximately 1-2 hours a day logging in and waiting for a

5  block, has approximately $60-$80 per month in unreimbursed business expenses, and drives an

6  estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Rollice was assigned

7  to less than 5 blocks per week.

8         9.    Plaintiff Rossana Romero is an adult resident of Pittsburg, California and works as an

9  Amazon courier in Contra Costa County, California. Plaintiff Romero spends more than 2 hours a day

10  logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses,

11  and drives an estimated 250 miles a week in the course of her employment for Amazon. Plaintiff Romero

12  was assigned to approximately 5-6 blocks per week.

13        10.    Plaintiff Abdullah Noman is an adult resident of Colma, California and works as an

14  Amazon courier. Plaintiff Noman spends approximately 15 minutes a day logging in and waiting for a

15  block, has approximately $50 per month in unreimbursed business expenses, and drives an estimated 50

16  miles a week in the course of his employment for Amazon. Plaintiff Noman was assigned to more than

17  10 blocks per week.

18        11.    Plaintiff Angela Winston is an adult resident of Vacaville, California and worked as an

19  Amazon courier in Marin County, California. Plaintiff Winston spent approximately 1-2 hours a day

20  logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses,

21  and drove an estimated 500 miles a week in the course of her employment for Amazon. Plaintiff Winston

22  was assigned to approximately 5-6 blocks per week.

23        12.    Plaintiff Libra Harrison is an adult resident of Lake Arrowhead, California and works as

24  an Amazon courier in Los Angeles County, California. Plaintiff Harrison spends an hour a day logging

25  in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives

26  an estimated 75 miles a week in the course of his employment for Amazon. Plaintiff Harrison was

27  assigned to approximately 4 blocks per week.

28

3

COMPLAINT

13.     Plaintiff Danish Kamal is an adult resident of Fountain Valley, California and works as an Amazon courier in Orange County, California. Plaintiff Kamal spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Kamal was assigned to approximately 8 blocks per week.

14.     Plaintiff Brian Black is an adult resident of Oxnard, California and works as an Amazon courier in Ventura County, California. Plaintiff Black spends 1-2 hours a day logging in and waiting for a block, has approximately $50 per month in unreimbursed business expenses, and drives an estimated 120 miles a week in the course of his employment for Amazon. Plaintiff Black was assigned to approximately 4 blocks per week.

15.     Plaintiff Trevor Baltzer is an adult resident of Apple Valley, California and works as an Amazon courier in Los Angeles County, California. Plaintiff Baltzer spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Baltzer was assigned to approximately 4 blocks per week.

16.     Plaintiff Tibor Fazekas is an adult resident of Los Angeles, California and works as an Amazon courier in Los Angeles County, California. Plaintiff Fazekas spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 400 miles a week in the course of his employment for Amazon. Plaintiff Fazekas was assigned to 5-6 blocks per week.

17.     Plaintiff Diana Anaya is an adult resident of Mountain View, California and worked as an Amazon courier. Plaintiff Anaya spent more than 2 hours a day logging in and waiting for a block, had approximately $70 per month in unreimbursed business expenses, and drove an estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Anaya was assigned to approximately 4 blocks per week.

18.     Plaintiff Jennifer Ailey is an adult resident of Inglewood, California and worked as an Amazon courier. Plaintiff Ailey spent approximately 30 minutes a day logging in and waiting for a block, had over $100 per month in unreimbursed business expenses, and drove an estimated 200 miles

a week in the course of her employment for Amazon. Plaintiff Ailey was assigned to approximately 10 blocks per week.

19.     Plaintiff Diana Carrasco is an adult resident of La Puente, California and worked as an Amazon courier. Plaintiff Carrasco spent approximately an hour a day logging in and waiting for a block, had approximately $90 per month in unreimbursed business expenses, and drove an estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Carrasco was assigned to approximately 4 blocks per week.

20.     Plaintiff Jennifer Lewis is an adult resident of Fullerton, California and works as an Amazon courier in Orange County, California. Plaintiff Lewis spends approximately 10 minutes a day logging in and waiting for a block, has approximately $35 per month in unreimbursed business expenses, and drives an estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Lewis was assigned to approximately 4 blocks per week.

21.     Plaintiff Curtis Azevedo is an adult resident of Pleasanton, California and worked as an Amazon courier in Santa Clara County, California. Plaintiff Azevedo spent approximately 2 hours a day logging in and waiting for a block, had approximately $90 per month in unreimbursed business expenses, and drove an estimated 700 miles a week in the course of his employment for Amazon. Plaintiff Azevedo was assigned to approximately 10 blocks per week.

22.     Plaintiff Daniel Ventura is an adult resident of Culver City, California and worked as an Amazon courier. Plaintiff Ventura spent approximately 1 hour a day logging in and waiting for a block, had over $100 per month in unreimbursed business expenses, and drove an estimated 350 miles a week in the course of his employment for Amazon. Plaintiff Ventura was assigned to approximately 10 blocks per week.

23.     Plaintiff Jorge Luis Fierro Dircio is an adult resident of West Sacramento, California and works as an Amazon courier in Sacramento County, California. Plaintiff Luis spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 360 miles a week in the course of his employment for Amazon. Plaintiff Dircio was assigned to more than 10 blocks per week.

Exhibit A, Page 25

1      24.    Plaintiff Tony Lee is an adult resident of Fullerton, California and works as an Amazon

2 courier in Orange County, California. Plaintiff Lee has more than $50 per month in unreimbursed

3 business expenses and drives an estimated 40 miles a week in the course of his employment for Amazon.

4 Plaintiff Lee was assigned to approximately 4 blocks per week.

5      25.    Defendant Amazon, Inc., is a Delaware corporation with its headquarters and primary

6 place of business in Seattle, Washington.

7      26.    Defendant Amazon Logistics, Inc., is a Delaware corporation headquartered in Seattle,

8 Washington. Defendant Amazon, Inc., and Defendant Amazon Logistics, Inc., are collectively referred

9 to as "Amazon" or "Defendants."

10                     **JURISDICTION AND VENUE**

11      27.    This Court has personal jurisdiction over Defendants because Defendants are licensed to

12 do business in California or otherwise conduct business in the State of California, a substantial portion

13 of the wrongdoing alleged by Plaintiffs occurred in the State of California and in this District, and

14 Defendants have sufficient minimum contacts with and otherwise have purposefully availed themselves

15 of the markets of the State of California and this District such that it is fair and just for Defendants to

16 adjudicate this dispute in this District.

17      28.    Venue is proper in this District pursuant to Code of Civil Procedure § 395 because the

18 Defendants are subject to personal jurisdiction in this District, a substantial part of the events,

19 transactions, and omissions giving rise to the claims asserted herein occurred in this District, and a

20 substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this District.

21                **GENERAL ALLEGATIONS ABOUT AMAZON**

22      29.    Amazon is a Seattle-based online retailer that contracts with couriers to deliver consumer

23 goods to its customers throughout the country. In order to deliver customer goods rapidly and at low

24 cost, Defendants created Amazon Flex ("Flex"), Amazon's in-house delivery program through which

25 Defendants hire couriers as independent contractors to deliver goods to customers.

26      30.    The services performed by Flex couriers are integral to Defendants' business. The Flex

27 program has allowed Defendants to maintain high profits by failing to pay couriers the legal minimum

28 wage and comply with standard labor laws in California. By taking advantage of the low costs of labor

through bringing delivery services in house, Defendants have attempted to avoid wage laws by misclassifying couriers as independent contractors.

31.     Defendants exercise significant control over the amount of revenue couriers earn, including by unilaterally setting delivery rates for each shift, known as "blocks," regardless of the number of packages within each block. By incorrectly labeling couriers as independent contractors, Defendants have shifted costs of delivery to the couriers, all the while ignoring compensable time such as waiting for blocks to become available, waiting periods at warehouses, and the reality of traffic-induced delays in metropolitan areas. Without relying on the couriers to bear the burden of transportation, traffic, and waiting times, Defendants would have had to reduce their profit margin by paying wages due to these employees.

32.     In addition, Defendants instruct couriers on how to interact with customers, how to handle deliveries, and how to deal with issues encountered while making deliveries. Couriers must follow Amazon's instructions regarding which deliveries to make, in what order, and which route to take. Similar to Amazon's warehouse and distribution center workers, whom Amazon treat as employees, couriers are essentially low-skilled workers running routes and delivering packages as dictated by Amazon. Amazon exerts almost complete control over couriers in their day-to-day work.

33.     Amazon does not have a set shift schedule for couriers. Amazon couriers begin their work for Amazon by logging in to the Amazon Flex App, searching for and waiting for a block to become available, and ultimately selecting a block if one becomes available. Shifts have typically been four hours or six hours long. Amazon does not tell the courier through the Flex App how many packages will need to be delivered in each shift. The Couriers only find out how many packages they must deliver when they show up at the Amazon Warehouse. There, Amazon assigns each courier the packages that the courier must deliver during that shift. The couriers do not have an option to accept or decline any particular package or delivery. Amazon courier shifts are extremely popular, so usually couriers, who have been waiting after logging in for a shift to become available, take the shifts almost immediately or very soon after Amazon posts them on the Flex App. Amazon exerts control over the shift bidding process, and essentially drives demand from the couriers by keeping the supply of shifts artificially low, controlling the timing of when shifts become available for couriers to take. Because Amazon does not

have a set shift schedule, Amazon typically parcels out the shifts hours or a single day before the shift begins, requiring active vigilance by couriers to monitor the dispatching feature of the Flex App. In a normal shift system, a company's employees would have ample time (usually weeks ahead) to consider what shifts best fit their schedule, matching the number of shifts available to the available number of workers. By making shifts available just hours or a single day before the shift, Amazon essentially forces all its couriers (who have been checking the App constantly) to bid on these limited number of shifts (one day's worth), all at the same time. This has the effect of artificially driving demand (by numerous couriers), for a limited supply of shifts (one day's worth of shifts).

34.     Because couriers usually have to "fight" for these shifts among other couriers, couriers are required by this artificially driven demand to log in and check the Flex App constantly, wait for a shift to pop up, and accept the shift before someone else takes it. This shift selection process was created by Amazon and has the direct effect of requiring couriers to spend unpaid waiting time in order to receive an assignment from Amazon. Many Plaintiffs have spent upwards of two hours or more per day, waiting for Amazon shifts. Couriers can be penalized or terminated for missing scheduled shifts and deliveries.

35.     Amazon requires drivers to arrive at the Amazon warehouse and check in for a shift fifteen (15) minutes prior to the start of the shift. Due to the popularity of Amazon Flex shifts, however, and the failure of Amazon to properly plan for and scale its hugely popular distribution business, seasoned Amazon couriers, including Plaintiffs, know that they must line up in their vehicles in front of Amazon's warehouse at least thirty (30) minutes before the start of a shift to receive their packages with sufficient time to deliver them all during their assigned time block. Amazon does not pay couriers for the waiting time before the start of a shift. Amazon has complete control over how its warehouses and distribution centers assign and distribute packages to drivers.

36.     If a courier does not deliver all the packages assigned to them by the time their time block ends, or if the packages are undeliverable for any other reason, such as inaccessible addresses or locked gates, Amazon requires couriers to return the undelivered packages back to the Amazon warehouse. Amazon does not pay for this time worked after the end of each block.

37.     Couriers must follow additional rules and requirements imposed by Amazon, and are

1   subject to termination, at Amazon's discretion, based on couriers' non-adherence to requirements such

2   as rules regarding conduct with customers, timeliness in making deliveries, scanning of packages, and

3   conduct when picking up or returning packages to the warehouse.

4        38.    Plaintiffs operate no distinct business of their own, have no specialized skills, and are

5   supervised and controlled by Defendants through myriad rules, policies, and pricing and rating systems.

6        39.    California law considers Plaintiffs to be employees, as they are not free from the control

7   and direction of Amazon in connection with the performance of the work, either under the contract for

8   the performance of the work or in fact; they perform work that is not outside the usual course of

9   Amazon's business; and they are not customarily engaged in an independently established trade,

10   occupation, or business of the same nature as the courier work performed. Plaintiffs also provide a

11   service that benefits Defendants; driving for Amazon requires no skills or experience beyond a driver's

12   license, vehicle, and insurance; Plaintiffs' tenure was for an indefinite period of time; Defendants

13   prohibit Plaintiffs from setting rates of pay for their services; Defendants maintain requirements for

14   customer service and can terminate Plaintiffs based on low customer ratings; and Defendants retain the

15   right to terminate Plaintiffs for any reason, without explanation, at any time.

16        40.    Amazon communicates directly with customers and resolves all customer support issues

17   itself when a customer's expectations are not met during a delivery. Based on customer feedback and

18   ratings, couriers such as Plaintiffs may be terminated at Amazon's sole discretion and without

19   justification.

20        41.    Based on Amazon's misclassification of its couriers as independent contractors, Amazon

21   requires its couriers to pay for many expenses necessary to perform their jobs, including expenses for

22   vehicle maintenance, gas, tolls, and smart phones with data plans. In addition, Defendants do not provide

23   workers' compensation or medical paid time off for injuries suffered on the job, including from carrying

24   heavy packages. Amazon does not pay for traffic tickets incurred by couriers while performing

25   deliveries. Amazon's compacted schedule for each shift may, in fact, incentivize or prompt couriers

26   (through fear of termination) to incur traffic tickets.

27

28

42.     In light of the expenses couriers incur in the regular course of their jobs and extra time outside worked outside of their blocks, couriers' hourly wages often fall below state and local minimum wage laws.

43.     Importantly, Defendants improperly benefitted from couriers' uncompensated work while waiting for their scheduled shifts and undergoing waiting periods at distribution sites. Couriers receive an hourly rate of pay for scheduled blocks, though they often require more time to complete their deliveries than their scheduled blocks allow, often times due to uncontrollable interruptions such as unanticipated traffic, but equally often, due to factors entirely within Amazon's control, such as the first delivery location of a shift being far from the Amazon warehouse, forcing couriers to drive twenty (20) minutes or more from the warehouse to the first delivery.

44.     Couriers are also required to return undeliverable packages to warehouse centers. The additional time incurred by returning to a warehouse center is not factored into scheduled shifts, and couriers do not receive additional compensation for this time. This unpaid time further pushes couriers' wages below state and local minimum wage.

45.     Amazon is a known industry leader in the gathering and use of information. In fact, Amazon prides itself on the gathering and use of information to drive efficiency (through its services such as Amazon Web Services (AWS) and, of course, its online shopping fulfillment service). Defendants have custody and control of exact records that show the hours couriers actually worked, including unpaid time when couriers were logged into Amazon's Flex App checking for and waiting to schedule blocks, the time packages were picked up and delivered, the time when undelivered packages were returned after a block had expired, and the exact GPS location and time of where every courier was before and after each shift. Despite having this information available to them, Defendants failed to pay full wages when due, pay full wages on discharge, provide accurate wage stubs, and pay minimum wages as required by law. Defendants further failed to pay for Plaintiffs' overtime labor, business expenses, and payroll taxes. Amazon also does not give couriers complete wage statements. For their hard work, the only information Amazon provides couriers on their direct deposit notification is the date of the block, how many hours were set for the block, and the direct deposit amount.

**Exemplar Day**

46.     For example, a typical courier ("Driver A") would experience the following schedule and expenses:

47.     Driver A worked primarily out of an Amazon distribution center approximately 15 miles away. Driver A generally worked the late afternoon and evening shifts Monday through Friday.

48.     On a typical workday, Driver A would log into the Amazon Flex App in the morning to start checking for available shifts. Consistent with the experience of other couriers, Amazon shifts were always in high demand, and shifts would often appear, and be taken immediately or shortly after they became available by other couriers. Thus typically Driver A had to check the Amazon App throughout the day to see if shifts were available. When a shift did become available, Driver A had to consider whether each available shift's timing fit her schedule, and whether the amount offered made sense, bearing in mind that Amazon did not tell her what city the route would be in, or how many packages she would have to deliver. Often times, while she was considering a shift, it would disappear after another courier claimed it before she could.

49.     Driver A spent approximately three unpaid hours per day checking for and attempting to claim shifts in the Amazon App. Consistent with the experience of other Amazon couriers, Driver A knew that in order to start her shift on time, she had to line up with the other couriers in front of Amazon's warehouse at least half an hour before the start of her block.

50.     Amazon frequently assigned her blocks in Petaluma or Santa Rosa, and it would take approximately 1.5 hours in travel time to reach these destinations. Because Petaluma and Santa Rosa were so far from the Amazon warehouse, Driver A was often unable to complete delivery of all assigned packages before the end of her four-hour shift.

51.     In such cases, Amazon instructed Driver A either to deliver all packages in Petaluma outside the four-hour window, or to bring the undelivered packages back to the Amazon warehouse in Richmond. Faced with the prospect of driving another hour or more back to the Amazon warehouse, Driver A often chose to work past the end of her four-hour shift in order to deliver all the packages and avoid driving them back to the Amazon Warehouse. Having complete control over the assignment of route, and not giving couriers the opportunity to decline routes (or face termination), Amazon forced couriers like Driver A to perform numerous and lengthy work duties in support of Amazon's delivery

11
COMPLAINT

business outside the of their assigned blocks. Despite these extra hours, Driver A was only compensated for individual 4-hour blocks.

52.     When Driver A would finish all deliveries, Amazon would not pay Driver A for the compulsory travel time back to her house from her work sites. Under California law compulsory travel time is compensable when employees are forced to travel long distances to distant work sites. The California Division of Labor Standards Enforcement measures such travel time as "the difference between the time it normally takes the employee to travel from his or her home to the assigned workplace and the time it takes the employee to travel from home to the distant work site." DLSE Opinion Letter, April 22, 2003.

53.     Normally, the driving time and mileage above and beyond an employee's normal commute would be compensable and reimbursable. However, Defendants knowingly and purposefully failed to reimburse Driver A for business expenses in order to avoid these extra costs.

54.     Therefore, a summary of a typical day for Driver A to work for Amazon Flex is as follows:

| *Driver A's Exemplar Day Calculations* | |
| --- | --- |
| *Checking App/Bidding on Shifts* | **3 hours** |
| *Mandatory Warehouse Waiting Period* | **0.5 hour** |
| *Assigned Amazon Block* | **4 hours** |
| *Driving Undelivered Packages Back to Warehouse/* | |
| *Compulsory Travel Time Back to Residence* | **1 hour** |
| ***Total*** | **8.5 hours** |

55.     As can be seen by this exemplar day, Driver A spends upwards of eight and a half (8.5) hours or more per day, in order to properly complete a four-hour Amazon block. Without accounting for business expenses paid by Driver A, on a $80 Amazon shift, Driver A would average out to approximately $9.41 per hour. On a $50 Amazon shift, Driver A would average out to approximately $5.88 per hour, working for Amazon.

56.     While working for Amazon, Driver A typically spent $15 per day for gasoline, which was uncompensated.

57.     Driver A incurred significant wear and tear on her vehicle, in addition to increased maintenance requirements such as more frequent oil changes, which, again, were all uncompensated. On a typical shift, Driver A drove approximately 36 miles from Amazon's warehouse to the first delivery location, approximately 20 miles delivering the packages from location to location, and then drove another 36 miles back to the Amazon warehouse in order to return undeliverable packages. Total miles driven by Driver A in this example would be approximately 92 miles for the shift. At the Internal Revenue Service's published $0.56 per mile reimbursement rate, this would require reimbursement by Amazon of $51.52 to Driver A (this includes mileage and gas).

58.     During her time working for Amazon, Driver A's cell phone service cost approximately $180 per month, or approximately $6 per day, also uncompensated by Amazon.

59.     Continuing with the previous example, a typical week for Driver A would entail her working for Amazon 5 shifts over 5 days. Driver A would have made a maximum of approximately $400 from Amazon ($80 x 5 shifts), while working a total of approximately 42.5 hours.

60.     However, against that income of $400, Driver A would have incurred unreimbursed expenses of approximately $287.60 per week. Amazon is essentially receiving Driver A's labor for free.

| *Exemplar Week Business Expenses* | |
|---|---|
| *IRS Mileage Reimbursement Estimations (including wear & tear)* | -$257.60 |
| *Cellphone Data Charges* | -$30 |
| *Subtotal* | -$287.60 |
| *Amazon Pay* | $400 |
| *Net Pay* | *$112.40* |

13
COMPLAINT

61.     When expenses are accounted for with respect to total compensation, Driver A is left with $112.40 in weekly earnings in this example. Specifically, Driver A's hourly rate was approximately $2.65 ($112.40 ÷ 42.5 hours).

62.     Plaintiffs seek compensation for all hours worked, all penalties, liquidated damages, and other damages permitted by law, restitution or disgorgement of all benefits obtained by Defendants from their unlawful business practices, injunctive and declaratory relief, punitive damages, all forms of equitable relief permitted by law, and reasonable attorneys' fees and costs.

### FIRST BASIS FOR RELIEF

### Unlawful Nonpayment of Wages (Cal. Lab. Code Labor Code, §§ 204, 204(c), 207)

63.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

64.     California Labor Code section 226 provides:

"All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

65.     Couriers were entitled to timely payment of at least minimum wage for all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendants intentionally failed to pay couriers for this compensable time and violated sections 204, 204(c), and 207 of the California Labor Code.

### SECOND BASIS FOR RELIEF

### Wage Statement Violations

66.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

67.     California Labor Code section 226 provides:

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based

on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

68.     In this case, Defendants have failed to provide such wage statements to Plaintiffs in that their wage statements do not include, without limitation, their accurate gross wages earned, all overtime hours worked, net wages earned, itemized compensation for rest periods, or all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

69.     Defendants have intentionally failed to put the information required by section 226(a) on the paycheck stubs. Defendant violated section 226(a) and Wage Order 4 by failing to maintain accurate records and by failing to furnish each employee with accurate itemized wage statements either semimonthly or for each pay period that reflected all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendant's refusal to properly record these times and expenses, to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiffs and members of the California Class suffered injury because they were not paid for all hours worked.

70.     Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial

1    violation of one hundred dollars ($100) for each subsequent violation, up to four thousand dollars

2    ($4,000).

3                                    **THIRD BASIS FOR RELIEF**

4                  **Failure to Provide Compensation to Former Couriers**

5          71.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

6          72.     Cal. Lab. Code § 203 states that if an employer willfully refuses to pay, without

7    abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who

8    is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the

9    due date, until paid or until an action to recover those wages is commenced. *See, e.g.,* California Labor

10    Code Sections 201, 202, and 203.

11          73.     Couriers who are no longer employed by Defendants were entitled to timely payment,

12    upon cessation of their employment, of at least minimum wage for all time spent waiting for shifts to

13    become available, time spent undergoing waiting periods at distribution centers, times spent returning

14    packages to the warehouse or delivering packages after a block expired, and to overtime wages for such

15    time that exceeded 8 hours in a day or 40 hours in a week. Additionally, Defendants were required to

16    reimburse business expenses and pay split shift premiums. Defendants' refusal to timely pay such wages

17    was willful. Defendants knew or should have known that such wages were due and payable to couriers,

18    yet failed to pay them in a timely manner, as required by sections 201 and 202. Those wages remain

19    unpaid.

20          74.     Pursuant to Labor Code section 203, couriers who are no longer employed by Defendants

21    are entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

22                                   **FOURTH BASIS FOR RELIEF**

23                         **Failure to Pay Minimum Wages**

24          75.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set

25    forth herein.

26          76.     Defendants did not pay Plaintiffs the California minimum wage for all hours worked.

27    During the relevant employment period, Defendants required Plaintiffs to work at rates that fell below

28

16

COMPLAINT

1  the mandated minimum wage. *See, e.g.,* IWC Minimum Wage Order No. M-2014; Labor Code §
2  1182.12, 1194, 1197.

3      77.   Plaintiffs were not exempt from the state's Minimum Wage Orders as employees.
4  Defendants were aware of their obligation to pay minimum wages but failed to do so.

5      78.   When one accounts for uncompensated time checking for and waiting for shift
6  assignments, for uncompensated time waiting at the warehouse to receive packages, for time spent
7  returning packages to the warehouse or delivering packages after a block expired, and expenses
8  improperly imposed on couriers, the amount of money Defendants provided couriers fell below
9  minimum wage requirements. This unlawful treatment is illustrated above through the exemplar
10 calculations.

11     79.   Plaintiffs seek these wages, liquidated damages, penalties, attorneys' fees and costs, and
12 interest under Cal. Labor Code § 1194, 1194.2, 1197, 1197.1.

13     80.   Defendants violated several municipal ordinances. Defendants did not pay Plaintiffs the
14 San Francisco minimum wage for all time worked as required by the San Francisco Minimum Wage
15 Ordinance, San Francisco Administrative Code, Chapter 12R (currently $16.32 per hour).

16     81.   Defendants did not pay Plaintiffs the Los Angeles minimum wage for all time worked as
17 required by the Los Angeles Minimum Wage Ordinance, Los Angeles Municipal Code, Chapter 18,
18 Article 7, section 187.00 et seq. (currently $15.00 per hour).

19     82.   Defendants did not pay Plaintiffs the San Diego minimum wage for all time worked as
20 required by the City of San Diego Earned Sick Leave and Minimum Wage Ordinance, San Diego
21 Municipal Code, Chapter 3, Article 9, Division 1 (currently $14.00 per hour).

22                          **FIFTH BASIS FOR RELIEF**
23                    **Failure to Reimburse for Business Expenses**

24     83.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set
25 forth herein.

26     84.   Cal. Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee
27 for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge
28 of his or her duties, or of his or her obedience to the directions of the employer ...."

85.    During the relevant employment period, Plaintiffs were required to maintain smart phones with data plans to work for Defendants and pay for all expenses related to the business use of their phones and related business expenses during the discharge of their duties for Defendants. However, Defendants failed to reimburse Plaintiffs for these expenditures. Plaintiffs were also required to provide their own vehicles to transport deliveries and were solely responsible to pay for tolls while driving, to maintain the vehicle's upkeep, pay for fuel, and insurance.

86.    Defendants are and were required to indemnify and reimburse Plaintiffs for all expenditures or losses incurred when made in the discharge of their duties but failed to do so as required under Cal. Labor Code § 2802. As a proximate result of Defendants' conduct, Plaintiffs suffered damages, including prejudgment interest under Cal. Labor Code § 2802(b) and costs and attorneys' fees under Cal. Labor Code § 2802(c).

**SIXTH BASIS FOR RELIEF**

**Failure to Pay Split Shift Premium Wages**

**(Cal. Lab. Code §§ 204, 1194, 1197, IWC Wage Order 7-2001(4)(C))**

87.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

88.    Cal. Labor Code § 1194 provides that any employee who receives less than the legal minimum wage applicable is entitled to recover in a civil action the unpaid balance of the full amount of the applicable minimum wage, plus interest thereon, attorney's fees, and the costs of suit.

89.    IWC Wage Order No. 7-2001(4)(C) mandates that employees who work a split-shift are entitled to receive the equivalent of one hour's pay at minimum wage for each day on which an employee works a split-shift. Section 2(R) that Wage Order defines the term "split-shift" as "a work schedule which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

90.    Defendants required couriers, including Plaintiffs, to work at least two shifts in a day, which were interrupted by non-paid, non-working time of at least one hour that were not applicable as rest or meal periods. During the first shift, couriers were required to log in to the Flex App to look for and accept work assignments. This shift lasted between approximately 30 minutes and 3 hours for Plaintiffs. During the second shift, couriers drove to the warehouse, picked up packages, and delivered

18

COMPLAINT

1    them. When Plaintiffs picked up a second block in the same day, this would be considered a third shift.

2    This time in between blocks was and is not compensated for, in violation of Cal. Labor Code §§ 1194,

3    1197, and IWC Wage Order No. 7-2001(4)(A) and (B).

4          91.    Defendants have access to records that measure the exact dates and times when Plaintiffs

5    were scheduled to work two shifts with non-compensable time in between. Amazon knows (1) when

6    each Plaintiff logged in to the Flex App to search for blocks, (2) when each Plaintiff accepted a block,

7    (3) when each Plaintiff picked up packages, (4) when each Plaintiff completed a block, (5) when each

8    Plaintiff completed their deliveries or brought undelivered packages to the warehouse. The unlawful

9    failure to pay split shift premiums when due caused Plaintiffs and all class members to suffer and

10   continue to suffer damages in amounts which are presently unknown to Plaintiffs, but which will be

11   ascertained at trial by discovery.

12         92.    Pursuant to Cal. Labor Code §§ 1194 and 1194.2, Plaintiffs are entitled to recover from

13   Defendants the full balance of any and all unpaid wages, interest thereon, liquidated damages equal to

14   the full amount of unpaid wages, and interest thereon, attorney's fees, and costs of suit.

15                          **SEVENTH BASIS FOR RELIEF**

16            **Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

17         93.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

18         94.    Cal. Bus. & Prof. Code § 17204 prohibits unfair competition, defined as "any unlawful,

19   unfair or fraudulent business act or practice." Plaintiffs seek compensation for the loss of their property

20   and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

21   Defendants' conduct, as described above, has been and continues to be deleterious to Plaintiffs. Plaintiffs

22   seek to enforce important rights affecting the public interest within the meaning of California Code of

23   Civil Procedure § 1021.5.

24         95.    The conduct of Defendants, as described above, constituted unlawful, unfair,

25   unconscionable, fraudulent business acts or practices, or a combination of such statutory violations,

26   which injured Plaintiffs and caused them loss of money. Defendants' misconduct, as alleged herein,

27   gave Defendants an unfair competitive advantage over their competitors, who did not engage in such

28   practices such as failing to pay wages due, ignoring compensable waiting periods, failing to pay business

**Exhibit A, Page 39**

expenses, and failing to provide sufficient wage statements. The misconduct, as alleged herein also violated established law and public policies that seek to regulate the employer-employee relationship in California. Failing to pay couriers the minimum wage and adhere to standard labor practices is against the goals and policies of the State of California.

96.     Defendants have engaged and continue to engage in unfair and unlawful business practices alleged in the preceding counts in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiffs minimum wage as required by California law; (b) failing to compensate Plaintiffs for time spent waiting for their shifts and their packages and returning to and spending time at Amazon's distribution sites; (c) failing to furnish accurate wage statements pursuant to Labor Code § 226; and (d) failing to maintain accurate timesheet and payroll records pursuant to 29 C.F.R. § 516.1.

97.     The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, fraudulent business practices, or a combination of such statutory violations, in violation of Cal. Bus. & Prof. Code § 17200 *et seq*. Defendants' acts and practices described herein offend established public policies, including those set forth in applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, or unscrupulous.

98.     The unfair business practices set forth above have and continue to injure Plaintiffs and the general public and cause injury and the loss of money, as described above. These violations have unjustly enriched Defendants at the expense of Plaintiffs. Defendants' actions deprived Plaintiffs of their expenses and full pay; consequently, Plaintiffs have lost money and property, are entitled to restitution in the amount of the wages and expenses that Defendants withheld. As a result, Plaintiffs are entitled to restitution and an injunction.

99.     Plaintiffs seek full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired, or converted by the Defendants by means of the unfair practices complained of herein within the last four years preceding the filing of the complaint in this action.

100.     Plaintiffs are informed and believe, and, on that basis, allege that at all times mentioned Defendants have engaged in unlawful, deceptive, and unfair business practices, as proscribed by California Business and Professions Code § 17200 et seq., including those set forth above, thereby

Exhibit A, Page 40

1  depriving Plaintiffs of the minimum working condition standards and conditions due to them under the

2  California laws and Industrial Welfare Commission wage orders as specifically described therein.

3  **EIGHTH BASIS FOR RELIEF**

4  **Failure to Pay Overtime Wages**

5      101.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

6      102.  During the relevant employment period, Defendants were required to pay all non-exempt

7  employees overtime compensation for all hours worked over 8 hours per day, for more than 40 hours

8  worked per week, or for hours worked on the seventh consecutive workday. *See, e.g.*, California Labor

9  Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, and 1174.5. Defendants failed

10  to do so.

11      103.  Plaintiffs are non-exempt employees.

12      104.  Defendants' conduct described herein violates IWC Wage Order No. 4-2001 of the

13  California Industrial Welfare Commission and the California Labor Code Sections 510, 1194, and 1197,

14  as well as Sections 200, *et seq.*, 1174, and 1174.5.

15      105.  As a result of Defendants' conduct, Plaintiffs have suffered damages and was deprived

16  of overtime wages. Plaintiffs seek these wages, attorneys' fees and costs, and interest under Cal. Labor

17  Code § 1194.

18  **NINTH BASIS FOR RELIEF**

19  **Failure to Provide Meal and Rest Breaks**

20      106.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

21      107.  During the relevant employment period, Plaintiffs regularly worked in excess of five (5)

22  hours per day without being afforded a meal period of not less than 30 minutes as required by Labor

23  Code §§ 226.7.

24      108.  California Labor Code §512 provides that an employer may not employ an employee for

25  a work period of more than five (5) hours per day without providing the employee with a meal period

26  of not less than 30 minutes.

27      109.  Further, California Labor Code § 226.7 (b)-(c) provides:

28

"(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

110.    As a result of Defendants' conduct in not providing for adequate meal periods, Plaintiffs are entitled to one additional hour of pay at their regular rate as a penalty under Labor Code § 226.7 for each day in which the proper meal period was not provided. In addition, Plaintiffs are entitled to interests, penalties, attorneys' fees, and costs pursuant to Labor Code §§ 218.5 and 218.6.

### TENTH BASIS FOR RELIEF

#### Unlawful Deductions from Wages

111.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

112.    Cal. Labor Code §§ 221 and 224 provide that an employer may only withhold amounts from an employee's wages when (1) required or empowered to do so by state law; (2) when a deduction is expressly authorized in writing by the employee to cover insurance premiums, benefit plan contributions, or other deductions not amounting to a rebate on the employee's wages; or (3) when a deduction to cover health, welfare or pension contributions is expressly authorized by a wage or collective bargaining agreement.

113.    During the relevant employment period, Defendants unlawfully made deductions from Plaintiffs' compensation—by shifting those costs to Plaintiffs without reimbursement—to cover Defendants' ordinary business expenses, including but not limited to, the costs of equipment and tools necessary for rendering services, including vehicle and smart phone expenses as detailed above.

22
COMPLAINT

114.   Defendants are liable to Plaintiffs pursuant to Cal. Labor Code §§ 221 and 224 for the withheld compensation.

115.   As a result of Defendants' conduct, Plaintiffs have suffered damages and seek penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.     A declaratory judgment that the policies and practices complained of herein are unlawful under the laws of California;

B.     An award of appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not limited to an order enjoining Defendants from continuing their unlawful policies and practices;

C.     An award of damages, statutory penalties, and restitution to be paid by Defendants according to proof;

D.     An award of general damages according to proof;

E.     An award of reasonable attorneys' fees and costs incurred by Plaintiffs in this action pursuant to state law;

F.     An award of pre- and post-judgement interest to Plaintiffs on these damages; and

G.     Such further relief as this Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs seek a trial by jury for all appropriate issues on each and every claim for relief in this Complaint.

ZIMMERMAN REED LLP

Dated: January 27, 2022

By:/s/ Caleb Marker
Caleb Marker
Jennifer Haidar
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel. (877) 500-8780
Fax (877) 500-8781

*Attorneys for Plaintiffs*

23
COMPLAINT

Electronically Filed by Superior Court of California, County of Orange, 01/27/2022 03:35:37 PM.
30-2022-01243131-CU-OE-CJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk. **CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>─ Caleb Marker (SBN 269721)<br>ZIMMERMAN RED LLP<br>6420 Wilshire Blvd., Suite 1080<br>Los Angeles, CA 90048<br>TELEPHONE NO.: 877-500-8780     FAX NO.: 877-500-8781<br>ATTORNEY FOR *(Name):* Plaintiffs | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange
STREET ADDRESS: 700 Civic Center Dr.
MAILING ADDRESS: 700 Civic Center Dr.
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Emmanuel Sitaca, et al. v. Amazon.com, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>30-2022-01243131-CU-OE-CJC |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: Judge Melissa R. McCormick<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☑ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence         f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* Ten (10)
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 27, 2022
Caleb Marker
_____       ▶   _____
(TYPE OR PRINT NAME)                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

**Exhibit A, Page 44**

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
        *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
        *domain, landlord/tenant, or*
        *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**Exhibit A, Page 45**

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME:  Central Justice Center | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE |
| PLANTIFF: Emmanuel Sitaca et.al. | |
| DEFENDANT: Amazon.com, Inc. et.al. | **Luis Fierro Dircio**<br>Clerk of the Court<br>By: **Skeeter Berry** , Deputy |
| Short Title: SITACA VS. AMAZON.COM, INC. | |

| | CASE NUMBER: |
|---|---|
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | 30-2022-01243131-CU-OE-CJC |

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>09/01/2022</u> at <u>09:00:00 AM</u> in Department <u>C13</u> of this court, located at <u>Central Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

<u>IMPORTANT:</u> Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

<u>IMPORTANTE:</u> Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

<u>QUAN TRỌNG:</u> Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court,  By: _Skeeter Berry_____, Deputy

**NOTICE OF HEARING**

Page: 1

**Exhibit A, Page 46**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br><br>Central Justice Center<br>700 W. Civic Center DRIVE<br>Santa Ana 92701 | |
|---|---|
| **SHORT TITLE:** SITACA VS. AMAZON.COM, INC. | |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**30-2022-01243131-CU-OE-CJC** |

I certify that I am not a party to this cause. I certify that a true copy of the above <u>Notice of Hearing</u> has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at <u>Santa Ana</u>, <u>California</u>, on <u>01/31/2022</u>. Following standard court practice the mailing will occur at <u>Sacramento</u>, <u>California</u> on <u>02/01/2022</u>.

Clerk of the Court, by: _Stutu Bemy_ _____, Deputy

ZIMMERMAN REED LLP
6420 WILSHIRE BOULEVARD # SUITE 1080
LOS ANGELES, CA 90048

EMMANUEL SITACA

KEITH D GOROZA

ROSSANA ROMERO

ABDULLAH NOMAN

ANGELA WINSTON

LIBRA HARRISON

DANISH KAMAL

BRIAN BLACK

TREVOR BALTZER

TIBOR FAZEKAS

DIANA ANAYA

**Exhibit A, Page 47**

JENNIFER AILEY                          DIANA CARRASCO

JENNIFER LEWIS                          CURTIS AZEVEDO

DANIEL VENTURA                          JORGE

TONY LEE                                ASHLEY ROLLICE

AMAZON.COM, INC.                        AMAZON LOGISTICS, INC.

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

V3 1013a (June 2004)                    Code of Civil Procedure , § CCP1013(a)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any   court   staff responsible for providing parties with assistance regarding  ADR.

(3) Information about the availability of local dispute resolution  programs  funded under the Dispute Resolutions Program Act  (DRPA),  in  counties  that  are participating in the DRPA. This information may take the form of a list of  the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with  the  complaint.  Cross-complainants  must  serve  a  copy  of  the  ADR Information Package on any new parties to the action along with the cross-complaint.

**Exhibit A, Page 49**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

**Exhibit A, Page 50**

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

**Exhibit A, Page 51**

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

**Exhibit A, Page 52**

| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                                            STATE:            ZIP CODE:<br>TELEPHONE NO.:                                   FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY<br><br>For your protection and privacy, please press the Clear This Form button after you are done printing this form. |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
        ☐ Under section 1141.11 of the Code of Civil Procedure
        ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____     _____     _____
                    (SIGNATURE OF PLAINTIFF OR ATTORNEY)      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____     _____     _____
                    (SIGNATURE OF DEFENDANT OR ATTORNEY)     (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION

Approved for Optional Use                                     California Rules of Court, rule 3.221
L1270 (Rev. March 2019)

Electronically Filed by Superior Court of California, County of Orange, 01/27/2022 03:35:37 PM.
30-2022-01243131-CU-OE-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EMMANUEL SITACA, KEITH DARYL GOROZA, ASHLEY
ROLLICE, ("Additional Parties Attachment Form is attached")

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Orange County Superior Court 751 W Santa Ana Blvd, Santa Ana, CA 92701 | CASE NUMBER: *(Número del Caso):* 30-2022-01243131-CU-OE-CJC Judge Melissa R. McCormick |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Caleb Marker, Zimmerman Reed, LLP, 6420 Wilshire Blvd., Ste. 1080, Los Angeles, CA 90048; 877-500-8780

| DATE: *(Fecha)* 01/27/2022 DAVID H. YAMASAKI, Clerk of the Court | Clerk, by *(Secretario)* _Skeeter Berry_ | , Deputy *(Adjunto)* |
|---|---|---|

Skeeter Berry

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **AMAZON.COM, INC.**

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 2-2-2022

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**Exhibit A, Page 54**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| SITACA v. AMAZON, INC., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[x] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

ROSSANA ROMERO, ABDULLAH NOMAN, ANGELA WINSTON, LIBRA HARRISON, DANISH KAMAL, BRIAN BLACK, TREVOR BALTZER, TIBOR FAZEKAS, DIANA ANAYA, JENNIFER AILEY, DIANA CARRASCO, JENNIFER LEWIS, CURTIS AZEVEDO, DANIEL VENTURA, JORGE LUIS FIERRO DIRCIO, and TONY LEE

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Electronically Filed by Superior Court of California, County of Orange, 01/27/2022 03:35:37 PM.
30-2022-01243131-CU-OE-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk.

1   CALEB MARKER (SBN 269721)
      caleb.marker@zimmreed.com
2   JENNIFER HAIDAR (SBN 337558)
      jennifer.haidar@zimmreed.com
3   ZIMMERMAN REED LLP
    6420 Wilshire Blvd., Suite 1080
4   Los Angeles, CA 90048
    (877) 500-8780 Telephone
5   (877) 500-8781 Facsimile

6   *Attorneys for Plaintiffs*

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **FOR THE COUNTY OF ORANGE**

10  EMMANUEL SITACA, KEITH DARYL          CASE NO.: 30-2022-01243131-CU-OE-CJC
    GOROZA, ASHLEY ROLLICE, ROSSANA
11  ROMERO, ABDULLAH NOMAN,               **COMPLAINT**   **Assigned for All Purposes**
    ANGELA WINSTON, LIBRA HARRISON,                       Judge Melissa R. McCormick
12  DANISH KAMAL, BRIAN BLACK,
    TREVOR BALTZER, TIBOR FAZEKAS,        1.    Unlawful Nonpayment of Wages (Cal. Lab.
13  DIANA ANAYA, JENNIFER AILEY,                Code Labor Code, §§ 204, 204(c), 207)
    DIANA CARRASCO, JENNIFER LEWIS,       2.    Failure to Provide Itemized Wage Statements
14  CURTIS AZEVEDO, DANIEL VENTURA,             (Cal. Lab. Code § 226)
    JORGE LUIS FIERRO DIRCIO, and TONY    3.    Failure to Provide Compensation to Former
15  LEE.                                        Couriers (Cal. Lab. Code § 201, 202, and 203)
                Plaintiffs,               4.    Failure to Pay Minimum Wage (Cal. Lab.
16                                              Code§§ 1194, 1194.2, 1197, 1197.1)
            v.                            5.    Failure to Reimburse Business Expenses (Cal.
17                                              Lab. Code § 2802)
    AMAZON.COM, INC., and AMAZON          6.    Failure to Pay Split Shift Premiums (Cal. Lab.
18  LOGISTICS, INC.,                            Code§§ 510, 1194)
                                          7.    Unfair and Unlawful Competition (Cal. Bus. &
19              Defendants.                     Prof. Code § 17200 et seq.)
                                          8.    Failure to Pay Overtime Wages  (Cal. Lab.
20                                              Code§§ 510, 1194)
                                          9.    Failure to Provide Meal and Rest Breaks (Cal.
21                                              Lab. Code§§ 512, § 226.7 (b)-(c))
                                          10.   Unlawful Deduction from Wages  (Cal. Lab.
22                                              Code§§ 221, 224)

23                                              **(Jury Trial Demanded)**

24

25

26

27

28

                                    1
                                COMPLAINT

1   Plaintiffs Emmanuel Sitaca, Keith Daryl Goroza, Ashley Rollice, Rossana Romero, Abdullah

2   Noman, Angela Winston, Libra Harrison, Danish Kamal, Brian Black, Trevor Baltzer, Tibor Fazekas,

3   Diana Anaya, Jennifer Ailey, Diana Carrasco, Jennifer Lewis, Curtis Azevedo, Daniel Ventura, Jorge

4   Luis Fierro Dircio, and Tony Lee. ("Plaintiffs"), bring this Complaint, against Defendants

5   AMAZON.COM, INC. and AMAZON LOGISTICS, INC. (collectively "Amazon" or "Defendants"),

6   and allege, upon personal knowledge as to their own facts, and upon the investigation of counsel as to

7   all other matters:

8                                    **INTRODUCTION**

9          1.      Plaintiffs are Amazon Flex delivery drivers, called "couriers," and bring this action to

10   recover lost wages for Defendants' willful violations of California state law.

11          2.      During all relevant times, Defendants employed Plaintiffs as couriers to provide delivery

12   services to Amazon customers who purchased goods through Defendants' online retail website.

13          3.      Plaintiffs are current and former Amazon couriers and have not been properly

14   compensated for the work they performed on Defendants' behalf.

15          4.      During all relevant times, Defendants misclassified Plaintiffs as independent contractors

16   as opposed to employees in willful violation of California state law, causing financial loss to Plaintiffs

17   in the form of unpaid wages.

18          5.      Plaintiffs bring this action to recover unpaid wages, liquidated damages, penalties, fees

19   and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

20                                    **THE PARTIES**

21          6.      Plaintiff Emmanuel Sitaca is an adult resident of Woodland Hills, California and works

22   as an Amazon courier in Los Angeles County, California. Plaintiff Sitaca spends more than 2 hours a

23   day logging in and waiting for a block, has over $100 per month in unreimbursed business expenses,

24   and drives an estimated 1200 miles a week in the course of his employment for Amazon. Plaintiff Sitaca

25   was assigned to more than 10 blocks per week.

26          7.      Plaintiff Keith Daryl Goroza is an adult resident of San Leandro, California and works

27   as an Amazon courier in Alameda County, California. Plaintiff Daryl spends more than 2 hours a day

28   logging in and waiting for a block, has over $100 per month in unreimbursed business expenses, and

1    drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Daryl was

2    assigned to approximately 5-6 blocks per week.

3          8.    Plaintiff Ashley Rollice is an adult resident of Chino Hills, California and works as an

4    Amazon courier. Plaintiff Rollice spends approximately 1-2 hours a day logging in and waiting for a

5    block, has approximately $60-$80 per month in unreimbursed business expenses, and drives an

6    estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Rollice was assigned

7    to less than 5 blocks per week.

8          9.    Plaintiff Rossana Romero is an adult resident of Pittsburg, California and works as an

9    Amazon courier in Contra Costa County, California. Plaintiff Romero spends more than 2 hours a day

10    logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses,

11    and drives an estimated 250 miles a week in the course of her employment for Amazon. Plaintiff Romero

12    was assigned to approximately 5-6 blocks per week.

13         10.    Plaintiff Abdullah Noman is an adult resident of Colma, California and works as an

14    Amazon courier. Plaintiff Noman spends approximately 15 minutes a day logging in and waiting for a

15    block, has approximately $50 per month in unreimbursed business expenses, and drives an estimated 50

16    miles a week in the course of his employment for Amazon. Plaintiff Noman was assigned to more than

17    10 blocks per week.

18         11.    Plaintiff Angela Winston is an adult resident of Vacaville, California and worked as an

19    Amazon courier in Marin County, California. Plaintiff Winston spent approximately 1-2 hours a day

20    logging in and waiting for a block, had more than $100 per month in unreimbursed business expenses,

21    and drove an estimated 500 miles a week in the course of her employment for Amazon. Plaintiff Winston

22    was assigned to approximately 5-6 blocks per week.

23         12.    Plaintiff Libra Harrison is an adult resident of Lake Arrowhead, California and works as

24    an Amazon courier in Los Angeles County, California. Plaintiff Harrison spends an hour a day logging

25    in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives

26    an estimated 75 miles a week in the course of his employment for Amazon. Plaintiff Harrison was

27    assigned to approximately 4 blocks per week.

28

13.     Plaintiff Danish Kamal is an adult resident of Fountain Valley, California and works as an Amazon courier in Orange County, California. Plaintiff Kamal spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Kamal was assigned to approximately 8 blocks per week.

14.     Plaintiff Brian Black is an adult resident of Oxnard, California and works as an Amazon courier in Ventura County, California. Plaintiff Black spends 1-2 hours a day logging in and waiting for a block, has approximately $50 per month in unreimbursed business expenses, and drives an estimated 120 miles a week in the course of his employment for Amazon. Plaintiff Black was assigned to approximately 4 blocks per week.

15.     Plaintiff Trevor Baltzer is an adult resident of Apple Valley, California and works as an Amazon courier in Los Angeles County, California. Plaintiff Baltzer spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 300 miles a week in the course of his employment for Amazon. Plaintiff Baltzer was assigned to approximately 4 blocks per week.

16.     Plaintiff Tibor Fazekas is an adult resident of Los Angeles, California and works as an Amazon courier in Los Angeles County, California. Plaintiff Fazekas spends more than 2 hours a day logging in and waiting for a block, has more than $100 per month in unreimbursed business expenses, and drives an estimated 400 miles a week in the course of his employment for Amazon. Plaintiff Fazekas was assigned to 5-6 blocks per week.

17.     Plaintiff Diana Anaya is an adult resident of Mountain View, California and worked as an Amazon courier. Plaintiff Anaya spent more than 2 hours a day logging in and waiting for a block, had approximately $70 per month in unreimbursed business expenses, and drove an estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Anaya was assigned to approximately 4 blocks per week.

18.     Plaintiff Jennifer Ailey is an adult resident of Inglewood, California and worked as an Amazon courier. Plaintiff Ailey spent approximately 30 minutes a day logging in and waiting for a block, had over $100 per month in unreimbursed business expenses, and drove an estimated 200 miles

4
COMPLAINT

1    a week in the course of her employment for Amazon. Plaintiff Ailey was assigned to approximately 10

2    blocks per week.

3         19.    Plaintiff Diana Carrasco is an adult resident of La Puente, California and worked as an

4    Amazon courier. Plaintiff Carrasco spent approximately an hour a day logging in and waiting for a

5    block, had approximately $90 per month in unreimbursed business expenses, and drove an estimated

6    200 miles a week in the course of her employment for Amazon. Plaintiff Carrasco was assigned to

7    approximately 4 blocks per week.

8         20.    Plaintiff Jennifer Lewis is an adult resident of Fullerton, California and works as an

9    Amazon courier in Orange County, California. Plaintiff Lewis spends approximately 10 minutes a day

10    logging in and waiting for a block, has approximately $35 per month in unreimbursed business expenses,

11    and drives an estimated 200 miles a week in the course of her employment for Amazon. Plaintiff Lewis

12    was assigned to approximately 4 blocks per week.

13         21.    Plaintiff Curtis Azevedo is an adult resident of Pleasanton, California and worked as an

14    Amazon courier in Santa Clara County, California. Plaintiff Azevedo spent approximately 2 hours a day

15    logging in and waiting for a block, had approximately $90 per month in unreimbursed business

16    expenses, and drove an estimated 700 miles a week in the course of his employment for Amazon.

17    Plaintiff Azevedo was assigned to approximately 10 blocks per week.

18         22.    Plaintiff Daniel Ventura is an adult resident of Culver City, California and worked as an

19    Amazon courier. Plaintiff Ventura spent approximately 1 hour a day logging in and waiting for a block,

20    had over $100 per month in unreimbursed business expenses, and drove an estimated 350 miles a week

21    in the course of his employment for Amazon. Plaintiff Ventura was assigned to approximately 10 blocks

22    per week.

23         23.    Plaintiff Jorge Luis Fierro Dircio is an adult resident of West Sacramento, California and

24    works as an Amazon courier in Sacramento County, California. Plaintiff Luis spends more than 2 hours

25    a day logging in and waiting for a block, has more than $100 per month in unreimbursed business

26    expenses, and drives an estimated 360 miles a week in the course of his employment for Amazon.

27    Plaintiff Dircio was assigned to more than 10 blocks per week.

28

24.     Plaintiff Tony Lee is an adult resident of Fullerton, California and works as an Amazon courier in Orange County, California. Plaintiff Lee has more than $50 per month in unreimbursed business expenses and drives an estimated 40 miles a week in the course of his employment for Amazon. Plaintiff Lee was assigned to approximately 4 blocks per week.

25.     Defendant Amazon, Inc., is a Delaware corporation with its headquarters and primary place of business in Seattle, Washington.

26.     Defendant Amazon Logistics, Inc., is a Delaware corporation headquartered in Seattle, Washington. Defendant Amazon, Inc., and Defendant Amazon Logistics, Inc., are collectively referred to as "Amazon" or "Defendants."

**JURISDICTION AND VENUE**

27.     This Court has personal jurisdiction over Defendants because Defendants are licensed to do business in California or otherwise conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiffs occurred in the State of California and in this District, and Defendants have sufficient minimum contacts with and otherwise have purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

28.     Venue is proper in this District pursuant to Code of Civil Procedure § 395 because the Defendants are subject to personal jurisdiction in this District, a substantial part of the events, transactions, and omissions giving rise to the claims asserted herein occurred in this District, and a substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this District.

**GENERAL ALLEGATIONS ABOUT AMAZON**

29.     Amazon is a Seattle-based online retailer that contracts with couriers to deliver consumer goods to its customers throughout the country. In order to deliver customer goods rapidly and at low cost, Defendants created Amazon Flex ("Flex"), Amazon's in-house delivery program through which Defendants hire couriers as independent contractors to deliver goods to customers.

30.     The services performed by Flex couriers are integral to Defendants' business. The Flex program has allowed Defendants to maintain high profits by failing to pay couriers the legal minimum wage and comply with standard labor laws in California. By taking advantage of the low costs of labor

1  through bringing delivery services in house, Defendants have attempted to avoid wage laws by
2  misclassifying couriers as independent contractors.

3       31.    Defendants exercise significant control over the amount of revenue couriers earn,
4  including by unilaterally setting delivery rates for each shift, known as "blocks," regardless of the
5  number of packages within each block. By incorrectly labeling couriers as independent contractors,
6  Defendants have shifted costs of delivery to the couriers, all the while ignoring compensable time such
7  as waiting for blocks to become available, waiting periods at warehouses, and the reality of traffic-
8  induced delays in metropolitan areas. Without relying on the couriers to bear the burden of
9  transportation, traffic, and waiting times, Defendants would have had to reduce their profit margin by
10  paying wages due to these employees.

11       32.    In addition, Defendants instruct couriers on how to interact with customers, how to
12  handle deliveries, and how to deal with issues encountered while making deliveries. Couriers must
13  follow Amazon's instructions regarding which deliveries to make, in what order, and which route to
14  take. Similar to Amazon's warehouse and distribution center workers, whom Amazon treat as
15  employees, couriers are essentially low-skilled workers running routes and delivering packages as
16  dictated by Amazon. Amazon exerts almost complete control over couriers in their day-to-day work.

17       33.    Amazon does not have a set shift schedule for couriers. Amazon couriers begin their
18  work for Amazon by logging in to the Amazon Flex App, searching for and waiting for a block to
19  become available, and ultimately selecting a block if one becomes available. Shifts have typically been
20  four hours or six hours long. Amazon does not tell the courier through the Flex App how many packages
21  will need to be delivered in each shift. The Couriers only find out how many packages they must deliver
22  when they show up at the Amazon Warehouse. There, Amazon assigns each courier the packages that
23  the courier must deliver during that shift. The couriers do not have an option to accept or decline any
24  particular package or delivery. Amazon courier shifts are extremely popular, so usually couriers, who
25  have been waiting after logging in for a shift to become available, take the shifts almost immediately or
26  very soon after Amazon posts them on the Flex App. Amazon exerts control over the shift bidding
27  process, and essentially drives demand from the couriers by keeping the supply of shifts artificially low,
28  controlling the timing of when shifts become available for couriers to take. Because Amazon does not

Exhibit A, Page 62

have a set shift schedule, Amazon typically parcels out the shifts hours or a single day before the shift begins, requiring active vigilance by couriers to monitor the dispatching feature of the Flex App. In a normal shift system, a company's employees would have ample time (usually weeks ahead) to consider what shifts best fit their schedule, matching the number of shifts available to the available number of workers. By making shifts available just hours or a single day before the shift, Amazon essentially forces all its couriers (who have been checking the App constantly) to bid on these limited number of shifts (one day's worth), all at the same time. This has the effect of artificially driving demand (by numerous couriers), for a limited supply of shifts (one day's worth of shifts).

34.     Because couriers usually have to "fight" for these shifts among other couriers, couriers are required by this artificially driven demand to log in and check the Flex App constantly, wait for a shift to pop up, and accept the shift before someone else takes it. This shift selection process was created by Amazon and has the direct effect of requiring couriers to spend unpaid waiting time in order to receive an assignment from Amazon. Many Plaintiffs have spent upwards of two hours or more per day, waiting for Amazon shifts. Couriers can be penalized or terminated for missing scheduled shifts and deliveries.

35.     Amazon requires drivers to arrive at the Amazon warehouse and check in for a shift fifteen (15) minutes prior to the start of the shift. Due to the popularity of Amazon Flex shifts, however, and the failure of Amazon to properly plan for and scale its hugely popular distribution business, seasoned Amazon couriers, including Plaintiffs, know that they must line up in their vehicles in front of Amazon's warehouse at least thirty (30) minutes before the start of a shift to receive their packages with sufficient time to deliver them all during their assigned time block. Amazon does not pay couriers for the waiting time before the start of a shift. Amazon has complete control over how its warehouses and distribution centers assign and distribute packages to drivers.

36.     If a courier does not deliver all the packages assigned to them by the time their time block ends, or if the packages are undeliverable for any other reason, such as inaccessible addresses or locked gates, Amazon requires couriers to return the undelivered packages back to the Amazon warehouse. Amazon does not pay for this time worked after the end of each block.

37.     Couriers must follow additional rules and requirements imposed by Amazon, and are

8<br>COMPLAINT

subject to termination, at Amazon's discretion, based on couriers' non-adherence to requirements such as rules regarding conduct with customers, timeliness in making deliveries, scanning of packages, and conduct when picking up or returning packages to the warehouse.

38.     Plaintiffs operate no distinct business of their own, have no specialized skills, and are supervised and controlled by Defendants through myriad rules, policies, and pricing and rating systems.

39.     California law considers Plaintiffs to be employees, as they are not free from the control and direction of Amazon in connection with the performance of the work, either under the contract for the performance of the work or in fact; they perform work that is not outside the usual course of Amazon's business; and they are not customarily engaged in an independently established trade, occupation, or business of the same nature as the courier work performed. Plaintiffs also provide a service that benefits Defendants; driving for Amazon requires no skills or experience beyond a driver's license, vehicle, and insurance; Plaintiffs' tenure was for an indefinite period of time; Defendants prohibit Plaintiffs from setting rates of pay for their services; Defendants maintain requirements for customer service and can terminate Plaintiffs based on low customer ratings; and Defendants retain the right to terminate Plaintiffs for any reason, without explanation, at any time.

40.     Amazon communicates directly with customers and resolves all customer support issues itself when a customer's expectations are not met during a delivery. Based on customer feedback and ratings, couriers such as Plaintiffs may be terminated at Amazon's sole discretion and without justification.

41.     Based on Amazon's misclassification of its couriers as independent contractors, Amazon requires its couriers to pay for many expenses necessary to perform their jobs, including expenses for vehicle maintenance, gas, tolls, and smart phones with data plans. In addition, Defendants do not provide workers' compensation or medical paid time off for injuries suffered on the job, including from carrying heavy packages. Amazon does not pay for traffic tickets incurred by couriers while performing deliveries. Amazon's compacted schedule for each shift may, in fact, incentivize or prompt couriers (through fear of termination) to incur traffic tickets.

Exhibit A, Page 64

42.     In light of the expenses couriers incur in the regular course of their jobs and extra time outside worked outside of their blocks, couriers' hourly wages often fall below state and local minimum wage laws.

43.     Importantly, Defendants improperly benefitted from couriers' uncompensated work while waiting for their scheduled shifts and undergoing waiting periods at distribution sites. Couriers receive an hourly rate of pay for scheduled blocks, though they often require more time to complete their deliveries than their scheduled blocks allow, often times due to uncontrollable interruptions such as unanticipated traffic, but equally often, due to factors entirely within Amazon's control, such as the first delivery location of a shift being far from the Amazon warehouse, forcing couriers to drive twenty (20) minutes or more from the warehouse to the first delivery.

44.     Couriers are also required to return undeliverable packages to warehouse centers. The additional time incurred by returning to a warehouse center is not factored into scheduled shifts, and couriers do not receive additional compensation for this time. This unpaid time further pushes couriers' wages below state and local minimum wage.

45.     Amazon is a known industry leader in the gathering and use of information. In fact, Amazon prides itself on the gathering and use of information to drive efficiency (through its services such as Amazon Web Services (AWS) and, of course, its online shopping fulfillment service). Defendants have custody and control of exact records that show the hours couriers actually worked, including unpaid time when couriers were logged into Amazon's Flex App checking for and waiting to schedule blocks, the time packages were picked up and delivered, the time when undelivered packages were returned after a block had expired, and the exact GPS location and time of where every courier was before and after each shift. Despite having this information available to them, Defendants failed to pay full wages when due, pay full wages on discharge, provide accurate wage stubs, and pay minimum wages as required by law. Defendants further failed to pay for Plaintiffs' overtime labor, business expenses, and payroll taxes. Amazon also does not give couriers complete wage statements. For their hard work, the only information Amazon provides couriers on their direct deposit notification is the date of the block, how many hours were set for the block, and the direct deposit amount.

**Exemplar Day**

10
COMPLAINT

46.     For example, a typical courier ("Driver A") would experience the following schedule and expenses:

47.     Driver A worked primarily out of an Amazon distribution center approximately 15 miles away. Driver A generally worked the late afternoon and evening shifts Monday through Friday.

48.     On a typical workday, Driver A would log into the Amazon Flex App in the morning to start checking for available shifts. Consistent with the experience of other couriers, Amazon shifts were always in high demand, and shifts would often appear, and be taken immediately or shortly after they became available by other couriers. Thus typically Driver A had to check the Amazon App throughout the day to see if shifts were available. When a shift did become available, Driver A had to consider whether each available shift's timing fit her schedule, and whether the amount offered made sense, bearing in mind that Amazon did not tell her what city the route would be in, or how many packages she would have to deliver. Often times, while she was considering a shift, it would disappear after another courier claimed it before she could.

49.     Driver A spent approximately three unpaid hours per day checking for and attempting to claim shifts in the Amazon App. Consistent with the experience of other Amazon couriers, Driver A knew that in order to start her shift on time, she had to line up with the other couriers in front of Amazon's warehouse at least half an hour before the start of her block.

50.     Amazon frequently assigned her blocks in Petaluma or Santa Rosa, and it would take approximately 1.5 hours in travel time to reach these destinations. Because Petaluma and Santa Rosa were so far from the Amazon warehouse, Driver A was often unable to complete delivery of all assigned packages before the end of her four-hour shift.

51.     In such cases, Amazon instructed Driver A either to deliver all packages in Petaluma outside the four-hour window, or to bring the undelivered packages back to the Amazon warehouse in Richmond. Faced with the prospect of driving another hour or more back to the Amazon warehouse, Driver A often chose to work past the end of her four-hour shift in order to deliver all the packages and avoid driving them back to the Amazon Warehouse. Having complete control over the assignment of route, and not giving couriers the opportunity to decline routes (or face termination), Amazon forced couriers like Driver A to perform numerous and lengthy work duties in support of Amazon's delivery

11
COMPLAINT

business outside the of their assigned blocks. Despite these extra hours, Driver A was only compensated for individual 4-hour blocks.

52.     When Driver A would finish all deliveries, Amazon would not pay Driver A for the compulsory travel time back to her house from her work sites. Under California law compulsory travel time is compensable when employees are forced to travel long distances to distant work sites. The California Division of Labor Standards Enforcement measures such travel time as "the difference between the time it normally takes the employee to travel from his or her home to the assigned workplace and the time it takes the employee to travel from home to the distant work site." DLSE Opinion Letter, April 22, 2003.

53.     Normally, the driving time and mileage above and beyond an employee's normal commute would be compensable and reimbursable. However, Defendants knowingly and purposefully failed to reimburse Driver A for business expenses in order to avoid these extra costs.

54.     Therefore, a summary of a typical day for Driver A to work for Amazon Flex is as follows:

| *Driver A's Exemplar Day Calculations* | |
|---|---|
| *Checking App/Bidding on Shifts* | **3 hours** |
| *Mandatory Warehouse Waiting Period* | **0.5 hour** |
| *Assigned Amazon Block* | **4 hours** |
| *Driving Undelivered Packages Back to Warehouse/ Compulsory Travel Time Back to Residence* | **1 hour** |
| ***Total*** | **8.5 hours** |

55.     As can be seen by this exemplar day, Driver A spends upwards of eight and a half (8.5) hours or more per day, in order to properly complete a four-hour Amazon block. Without accounting for business expenses paid by Driver A, on a $80 Amazon shift, Driver A would average out to approximately $9.41 per hour. On a $50 Amazon shift, Driver A would average out to approximately $5.88 per hour, working for Amazon.

56.     While working for Amazon, Driver A typically spent $15 per day for gasoline, which was uncompensated.

57.     Driver A incurred significant wear and tear on her vehicle, in addition to increased maintenance requirements such as more frequent oil changes, which, again, were all uncompensated. On a typical shift, Driver A drove approximately 36 miles from Amazon's warehouse to the first delivery location, approximately 20 miles delivering the packages from location to location, and then drove another 36 miles back to the Amazon warehouse in order to return undeliverable packages. Total miles driven by Driver A in this example would be approximately 92 miles for the shift. At the Internal Revenue Service's published $0.56 per mile reimbursement rate, this would require reimbursement by Amazon of $51.52 to Driver A (this includes mileage and gas).

58.     During her time working for Amazon, Driver A's cell phone service cost approximately $180 per month, or approximately $6 per day, also uncompensated by Amazon.

59.     Continuing with the previous example, a typical week for Driver A would entail her working for Amazon 5 shifts over 5 days. Driver A would have made a maximum of approximately $400 from Amazon ($80 x 5 shifts), while working a total of approximately 42.5 hours.

60.     However, against that income of $400, Driver A would have incurred unreimbursed expenses of approximately $287.60 per week. Amazon is essentially receiving Driver A's labor for free.

*Exemplar Week Business Expenses*

| | |
|---|---|
| ***IRS Mileage Reimbursement Estimations (including wear & tear)*** | -$257.60 |
| ***Cellphone Data Charges*** | -$30 |
| ***Subtotal*** | -$287.60 |
| ***Amazon Pay*** | $400 |
| ***Net Pay*** | *$112.40* |

61.     When expenses are accounted for with respect to total compensation, Driver A is left with $112.40 in weekly earnings in this example. Specifically, Driver A's hourly rate was approximately $2.65 ($112.40 ÷ 42.5 hours).

62.     Plaintiffs seek compensation for all hours worked, all penalties, liquidated damages, and other damages permitted by law, restitution or disgorgement of all benefits obtained by Defendants from their unlawful business practices, injunctive and declaratory relief, punitive damages, all forms of equitable relief permitted by law, and reasonable attorneys' fees and costs.

### FIRST BASIS FOR RELIEF

### Unlawful Nonpayment of Wages (Cal. Lab. Code Labor Code, §§ 204, 204(c), 207)

63.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

64.     California Labor Code section 226 provides:

"All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

65.     Couriers were entitled to timely payment of at least minimum wage for all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendants intentionally failed to pay couriers for this compensable time and violated sections 204, 204(c), and 207 of the California Labor Code.

### SECOND BASIS FOR RELIEF

### Wage Statement Violations

66.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

67.     California Labor Code section 226 provides:

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based

on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

68.     In this case, Defendants have failed to provide such wage statements to Plaintiffs in that their wage statements do not include, without limitation, their accurate gross wages earned, all overtime hours worked, net wages earned, itemized compensation for rest periods, or all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

69.     Defendants have intentionally failed to put the information required by section 226(a) on the paycheck stubs. Defendant violated section 226(a) and Wage Order 4 by failing to maintain accurate records and by failing to furnish each employee with accurate itemized wage statements either semimonthly or for each pay period that reflected all time spent waiting for shifts to become available, time spent undergoing waiting periods at distribution centers, times spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers. Defendant's refusal to properly record these times and expenses, to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiffs and members of the California Class suffered injury because they were not paid for all hours worked.

70.     Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial

---

15
COMPLAINT

1  violation of one hundred dollars ($100) for each subsequent violation, up to four thousand dollars

2  ($4,000).

3                          **THIRD BASIS FOR RELIEF**

4                    **Failure to Provide Compensation to Former Couriers**

5          71.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

6          72.    Cal. Lab. Code § 203 states that if an employer willfully refuses to pay, without

7  abatement or reduction, in accordance with Labor Code §§ 201 and 202, any wages of an employee who

8  is discharged or who quits, the employee's wages shall continue as a penalty for up to 30 days from the

9  due date, until paid or until an action to recover those wages is commenced. *See, e.g.*, California Labor

10 Code Sections 201, 202, and 203.

11         73.    Couriers who are no longer employed by Defendants were entitled to timely payment,

12 upon cessation of their employment, of at least minimum wage for all time spent waiting for shifts to

13 become available, time spent undergoing waiting periods at distribution centers, times spent returning

14 packages to the warehouse or delivering packages after a block expired, and to overtime wages for such

15 time that exceeded 8 hours in a day or 40 hours in a week. Additionally, Defendants were required to

16 reimburse business expenses and pay split shift premiums. Defendants' refusal to timely pay such wages

17 was willful. Defendants knew or should have known that such wages were due and payable to couriers,

18 yet failed to pay them in a timely manner, as required by sections 201 and 202. Those wages remain

19 unpaid.

20         74.    Pursuant to Labor Code section 203, couriers who are no longer employed by Defendants

21 are entitled to a penalty in the amount of his or her daily wage multiplied by 30 days.

22                         **FOURTH BASIS FOR RELIEF**

23                         **Failure to Pay Minimum Wages**

24         75.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set

25 forth herein.

26         76.    Defendants did not pay Plaintiffs the California minimum wage for all hours worked.

27 During the relevant employment period, Defendants required Plaintiffs to work at rates that fell below

28

                                    16
                                COMPLAINT

the mandated minimum wage. *See, e.g.*, IWC Minimum Wage Order No. M-2014; Labor Code § 1182.12, 1194, 1197.

77.     Plaintiffs were not exempt from the state's Minimum Wage Orders as employees. Defendants were aware of their obligation to pay minimum wages but failed to do so.

78.     When one accounts for uncompensated time checking for and waiting for shift assignments, for uncompensated time waiting at the warehouse to receive packages, for time spent returning packages to the warehouse or delivering packages after a block expired, and expenses improperly imposed on couriers, the amount of money Defendants provided couriers fell below minimum wage requirements. This unlawful treatment is illustrated above through the exemplar calculations.

79.     Plaintiffs seek these wages, liquidated damages, penalties, attorneys' fees and costs, and interest under Cal. Labor Code § 1194, 1194.2, 1197, 1197.1.

80.     Defendants violated several municipal ordinances. Defendants did not pay Plaintiffs the San Francisco minimum wage for all time worked as required by the San Francisco Minimum Wage Ordinance, San Francisco Administrative Code, Chapter 12R (currently $16.32 per hour).

81.     Defendants did not pay Plaintiffs the Los Angeles minimum wage for all time worked as required by the Los Angeles Minimum Wage Ordinance, Los Angeles Municipal Code, Chapter 18, Article 7, section 187.00 et seq. (currently $15.00 per hour).

82.     Defendants did not pay Plaintiffs the San Diego minimum wage for all time worked as required by the City of San Diego Earned Sick Leave and Minimum Wage Ordinance, San Diego Municipal Code, Chapter 3, Article 9, Division 1 (currently $14.00 per hour).

### FIFTH BASIS FOR RELIEF

#### Failure to Reimburse for Business Expenses

83.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

84.     Cal. Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer ...."

85.     During the relevant employment period, Plaintiffs were required to maintain smart phones with data plans to work for Defendants and pay for all expenses related to the business use of their phones and related business expenses during the discharge of their duties for Defendants. However, Defendants failed to reimburse Plaintiffs for these expenditures. Plaintiffs were also required to provide their own vehicles to transport deliveries and were solely responsible to pay for tolls while driving, to maintain the vehicle's upkeep, pay for fuel, and insurance.

86.     Defendants are and were required to indemnify and reimburse Plaintiffs for all expenditures or losses incurred when made in the discharge of their duties but failed to do so as required under Cal. Labor Code § 2802. As a proximate result of Defendants' conduct, Plaintiffs suffered damages, including prejudgment interest under Cal. Labor Code § 2802(b) and costs and attorneys' fees under Cal. Labor Code § 2802(c).

## SIXTH BASIS FOR RELIEF

### Failure to Pay Split Shift Premium Wages

### (Cal. Lab. Code §§ 204, 1194, 1197, IWC Wage Order 7-2001(4)(C))

87.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

88.     Cal. Labor Code § 1194 provides that any employee who receives less than the legal minimum wage applicable is entitled to recover in a civil action the unpaid balance of the full amount of the applicable minimum wage, plus interest thereon, attorney's fees, and the costs of suit.

89.     IWC Wage Order No. 7-2001(4)(C) mandates that employees who work a split-shift are entitled to receive the equivalent of one hour's pay at minimum wage for each day on which an employee works a split-shift. Section 2(R) that Wage Order defines the term "split-shift" as "a work schedule which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

90.     Defendants required couriers, including Plaintiffs, to work at least two shifts in a day, which were interrupted by non-paid, non-working time of at least one hour that were not applicable as rest or meal periods. During the first shift, couriers were required to log in to the Flex App to look for and accept work assignments. This shift lasted between approximately 30 minutes and 3 hours for Plaintiffs. During the second shift, couriers drove to the warehouse, picked up packages, and delivered

18
COMPLAINT

1  them. When Plaintiffs picked up a second block in the same day, this would be considered a third shift.

2  This time in between blocks was and is not compensated for, in violation of Cal. Labor Code §§ 1194,

3  1197, and IWC Wage Order No. 7-2001(4)(A) and (B).

4        91.     Defendants have access to records that measure the exact dates and times when Plaintiffs

5  were scheduled to work two shifts with non-compensable time in between. Amazon knows (1) when

6  each Plaintiff logged in to the Flex App to search for blocks, (2) when each Plaintiff accepted a block,

7  (3) when each Plaintiff picked up packages, (4) when each Plaintiff completed a block, (5) when each

8  Plaintiff completed their deliveries or brought undelivered packages to the warehouse. The unlawful

9  failure to pay split shift premiums when due caused Plaintiffs and all class members to suffer and

10  continue to suffer damages in amounts which are presently unknown to Plaintiffs, but which will be

11  ascertained at trial by discovery.

12        92.     Pursuant to Cal. Labor Code §§ 1194 and 1194.2, Plaintiffs are entitled to recover from

13  Defendants the full balance of any and all unpaid wages, interest thereon, liquidated damages equal to

14  the full amount of unpaid wages, and interest thereon, attorney's fees, and costs of suit.

15                                 **SEVENTH BASIS FOR RELIEF**

16                 **Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***

17        93.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

18        94.     Cal. Bus. & Prof. Code § 17204 prohibits unfair competition, defined as "any unlawful,

19  unfair or fraudulent business act or practice." Plaintiffs seek compensation for the loss of their property

20  and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.

21  Defendants' conduct, as described above, has been and continues to be deleterious to Plaintiffs. Plaintiffs

22  seek to enforce important rights affecting the public interest within the meaning of California Code of

23  Civil Procedure § 1021.5.

24        95.     The conduct of Defendants, as described above, constituted unlawful, unfair,

25  unconscionable, fraudulent business acts or practices, or a combination of such statutory violations,

26  which injured Plaintiffs and caused them loss of money. Defendants' misconduct, as alleged herein,

27  gave Defendants an unfair competitive advantage over their competitors, who did not engage in such

28  practices such as failing to pay wages due, ignoring compensable waiting periods, failing to pay business

1   expenses, and failing to provide sufficient wage statements. The misconduct, as alleged herein also

2   violated established law and public policies that seek to regulate the employer-employee relationship in

3   California. Failing to pay couriers the minimum wage and adhere to standard labor practices is against

4   the goals and policies of the State of California.

5       96.    Defendants have engaged and continue to engage in unfair and unlawful business

6   practices alleged in the preceding counts in California by practicing, employing, and utilizing the

7   employment practices outlined above, inclusive, to wit, by: (a) failing to pay to Plaintiffs minimum

8   wage as required by California law; (b) failing to compensate Plaintiffs for time spent waiting for their

9   shifts and their packages and returning to and spending time at Amazon's distribution sites; (c) failing

10  to furnish accurate wage statements pursuant to Labor Code § 226; and (d) failing to maintain accurate

11  timesheet and payroll records pursuant to 29 C.F.R. § 516.1.

12      97.    The acts complained of herein, and each of them, constitute unfair, unlawful,

13  unconscionable, fraudulent business practices, or a combination of such statutory violations, in violation

14  of Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants' acts and practices described herein offend

15  established public policies, including those set forth in applicable wage and hour laws, and involve

16  business practices that are immoral, unethical, oppressive, or unscrupulous.

17      98.    The unfair business practices set forth above have and continue to injure Plaintiffs and

18  the general public and cause injury and the loss of money, as described above. These violations have

19  unjustly enriched Defendants at the expense of Plaintiffs. Defendants' actions deprived Plaintiffs of their

20  expenses and full pay; consequently, Plaintiffs have lost money and property, are entitled to restitution

21  in the amount of the wages and expenses that Defendants withheld. As a result, Plaintiffs are entitled to

22  restitution and an injunction.

23      99.    Plaintiffs seek full restitution of monies, as necessary and according to proof, to restore

24  any and all monies withheld, acquired, or converted by the Defendants by means of the unfair practices

25  complained of herein within the last four years preceding the filing of the complaint in this action.

26      100.   Plaintiffs are informed and believe, and, on that basis, allege that at all times mentioned

27  Defendants have engaged in unlawful, deceptive, and unfair business practices, as proscribed by

28  California Business and Professions Code § 17200 et seq., including those set forth above, thereby

1 | depriving Plaintiffs of the minimum working condition standards and conditions due to them under the

2 | California laws and Industrial Welfare Commission wage orders as specifically described therein.

3 | **EIGHTH BASIS FOR RELIEF**

4 | **Failure to Pay Overtime Wages**

5 | 101. Plaintiffs re-allege and incorporate all previous paragraphs herein.

6 | 102. During the relevant employment period, Defendants were required to pay all non-exempt

7 | employees overtime compensation for all hours worked over 8 hours per day, for more than 40 hours

8 | worked per week, or for hours worked on the seventh consecutive workday. *See, e.g.*, California Labor

9 | Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, and 1174.5. Defendants failed

10 | to do so.

11 | 103. Plaintiffs are non-exempt employees.

12 | 104. Defendants' conduct described herein violates IWC Wage Order No. 4-2001 of the

13 | California Industrial Welfare Commission and the California Labor Code Sections 510, 1194, and 1197,

14 | as well as Sections 200, *et seq.*, 1174, and 1174.5.

15 | 105. As a result of Defendants' conduct, Plaintiffs have suffered damages and was deprived

16 | of overtime wages. Plaintiffs seek these wages, attorneys' fees and costs, and interest under Cal. Labor

17 | Code § 1194.

18 | **NINTH BASIS FOR RELIEF**

19 | **Failure to Provide Meal and Rest Breaks**

20 | 106. Plaintiffs re-allege and incorporate all previous paragraphs herein.

21 | 107. During the relevant employment period, Plaintiffs regularly worked in excess of five (5)

22 | hours per day without being afforded a meal period of not less than 30 minutes as required by Labor

23 | Code §§ 226.7.

24 | 108. California Labor Code §512 provides that an employer may not employ an employee for

25 | a work period of more than five (5) hours per day without providing the employee with a meal period

26 | of not less than 30 minutes.

27 | 109. Further, California Labor Code § 226.7 (b)-(c) provides:

28 |

21
COMPLAINT

1    "(b) An employer shall not require an employee to work during a meal or rest or recovery

2    period mandated pursuant to an applicable statute, or applicable regulation, standard, or

3    order of the Industrial Welfare Commission, the Occupational Safety and Health

4    Standards Board, or the Division of Occupational Safety and Health.

5    (c) If an employer fails to provide an employee a meal or rest or recovery period in

6    accordance with a state law, including, but not limited to, an applicable statute or

7    applicable regulation, standard, or order of the Industrial Welfare Commission, the

8    Occupational Safety and Health Standards Board, or the Division of Occupational Safety

9    and Health, the employer shall pay the employee one additional hour of pay at the

10   employee's regular rate of compensation for each workday that the meal or rest or

11   recovery period is not provided."

12       110.    As a result of Defendants' conduct in not providing for adequate meal periods, Plaintiffs

13   are entitled to one additional hour of pay at their regular rate as a penalty under Labor Code § 226.7 for

14   each day in which the proper meal period was not provided. In addition, Plaintiffs are entitled to

15   interests, penalties, attorneys' fees, and costs pursuant to Labor Code §§ 218.5 and 218.6.

16                                    **TENTH BASIS FOR RELIEF**

17                                **Unlawful Deductions from Wages**

18       111.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

19       112.    Cal. Labor Code §§ 221 and 224 provide that an employer may only withhold amounts

20   from an employee's wages when (1) required or empowered to do so by state law; (2) when a deduction

21   is expressly authorized in writing by the employee to cover insurance premiums, benefit plan

22   contributions, or other deductions not amounting to a rebate on the employee's wages; or (3) when a

23   deduction to cover health, welfare or pension contributions is expressly authorized by a wage or

24   collective bargaining agreement.

25       113.    During the relevant employment period, Defendants unlawfully made deductions from

26   Plaintiffs' compensation—by shifting those costs to Plaintiffs without reimbursement—to cover

27   Defendants' ordinary business expenses, including but not limited to, the costs of equipment and tools

28   necessary for rendering services, including vehicle and smart phone expenses as detailed above.

114.    Defendants are liable to Plaintiffs pursuant to Cal. Labor Code §§ 221 and 224 for the withheld compensation.

115.    As a result of Defendants' conduct, Plaintiffs have suffered damages and seek penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.    A declaratory judgment that the policies and practices complained of herein are unlawful under the laws of California;

B.    An award of appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not limited to an order enjoining Defendants from continuing their unlawful policies and practices;

C.    An award of damages, statutory penalties, and restitution to be paid by Defendants according to proof;

D.    An award of general damages according to proof;

E.    An award of reasonable attorneys' fees and costs incurred by Plaintiffs in this action pursuant to state law;

F.    An award of pre- and post-judgement interest to Plaintiffs on these damages; and

G.    Such further relief as this Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs seek a trial by jury for all appropriate issues on each and every claim for relief in this Complaint.


ZIMMERMAN REED LLP

Dated: January 27, 2022

By:/s/ Caleb Marker
Caleb Marker
Jennifer Haidar
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel. (877) 500-8780
Fax (877) 500-8781

*Attorneys for Plaintiffs*

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Caleb Marker (SBN 269721)<br>ZIMMERMAN RED LLP<br>6420 Wilshire Blvd., Suite 1080<br>Los Angeles, CA 90048 | |

TELEPHONE NO.: 877-500-8780   FAX NO.: 877-500-8781
ATTORNEY FOR *(Name)*: Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange
STREET ADDRESS: 700 Civic Center Dr.
MAILING ADDRESS: 700 Civic Center Dr.
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Emmanuel Sitaca, et al. v. Amazon.com, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>30-2022-01243131-CU-OE-CJC |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | JUDGE: Judge Melissa R. McCormick<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [✓] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
*(Cal. Rules of Court, rules 3.400–3.403)*
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify)*: Ten (10)
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 27, 2022
Caleb Marker
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

**Exhibit A, Page 79**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
    Auto (22)–Personal Injury/Property
        Damage/Wrongful Death
    Uninsured Motorist (46) *(if the
        case involves an uninsured
        motorist claim subject to
        arbitration, check this item
        instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or
        toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice–
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil
        harassment)* (08)
    Defamation (e.g., slander, libel)
        (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer
                or wrongful eviction)*
        Contract/Warranty Breach–Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case–Seller Plaintiff
        Other Promissory Note/Collections
            Case
    Insurance Coverage *(not provisionally
        complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent
            domain, landlord/tenant, or
            foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal
        drugs, check this item; otherwise,
        report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case
            Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor
            Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of
            County)
        Confession of Judgment *(non-
            domestic relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment
            Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified
        above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-
            harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified
        above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult
            Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief From Late
            Claim
        Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

**Exhibit A, Page 80**

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | **FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE* |
| PLAINTIFF: Emmanuel Sitaca et.al. | |
| DEFENDANT: Amazon.com, Inc. et.al. | **Luis Fierro Dircio**<br>Clerk of the Court<br>By: **Skeeter Berry**, Deputy |
| Short Title: SITACA VS. AMAZON.COM, INC. | |

| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2022-01243131-CU-OE-CJC |
|---|---|

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>09/01/2022</u> at <u>09:00:00 AM</u> in Department <u>C13</u> of this court, located at <u>Central Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

<u>IMPORTANT</u>: Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

<u>IMPORTANTE</u>: Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

<u>QUAN TRỌNG</u>: Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: _Skeeter Berry_ _____ , Deputy

**NOTICE OF HEARING**                                    Page: 1

**Exhibit A, Page 81**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | |
|---|---|
| Central Justice Center<br>700 W. Civic Center DRIVE<br>Santa Ana 92701 | |
| SHORT TITLE: SITACA VS. AMAZON.COM, INC. | |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**30-2022-01243131-CU-OE-CJC** |

I certify that I am not a party to this cause. I certify that a true copy of the above <u>Notice of Hearing</u> has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at <u>Santa Ana</u>, <u>California</u>, on <u>01/31/2022</u>. Following standard court practice the mailing will occur at <u>Sacramento</u>, <u>California</u> on <u>02/01/2022</u>.

Clerk of the Court, by: _Statu Bery_ _____, Deputy

ZIMMERMAN REED LLP
6420 WILSHIRE BOULEVARD # SUITE 1080
LOS ANGELES, CA 90048

EMMANUEL SITACA

KEITH D GOROZA

ROSSANA ROMERO

ABDULLAH NOMAN

ANGELA WINSTON

LIBRA HARRISON

DANISH KAMAL

BRIAN BLACK

TREVOR BALTZER

TIBOR FAZEKAS

DIANA ANAYA

**Exhibit A, Page 82**

JENNIFER AILEY                          DIANA CARRASCO


JENNIFER LEWIS                          CURTIS AZEVEDO


DANIEL VENTURA                          JORGE


TONY LEE                                ASHLEY ROLLICE


AMAZON.COM, INC.                        AMAZON LOGISTICS, INC.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

V3 1013a (June 2004)                                    Code of Civil Procedure , § CCP1013(a)

**Exhibit A, Page 83**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ALTERNATIVE DISPUTE RESOLUTION (ADR)
INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the
ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint,
an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR
and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to
any applicable local court rules and directions for contacting any court staff
responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded
under the Dispute Resolutions Program Act (DRPA), in counties that are
participating in the DRPA. This information may take the form of a list of the
applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR
process.

(b) A court may make the ADR Information Package available on its website as long as
paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant
along with the complaint. Cross-complainants must serve a copy of the ADR
Information Package on any new parties to the action along with the cross-complaint.

**Exhibit A, Page 84**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

L1200 Rev. Dec. 2019

**Exhibit A, Page 85**

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

   Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

   Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

   Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

   Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY:       STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                          STATE:          ZIP CODE:<br>TELEPHONE NO.:                 FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | For your protection and privacy, please press the Clear This Form button after you are done printing this form. |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
      ☐ Under section 1141.11 of the Code of Civil Procedure
      ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____    _____    _____
                      (SIGNATURE OF PLAINTIFF OR ATTORNEY)    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____    _____    _____
                      (SIGNATURE OF DEFENDANT OR ATTORNEY)   (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION

Approved for Optional Use                                    California Rules of Court, rule 3.221
L1270 (Rev. March 2019)

**Exhibit A, Page 88**